# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RYKI G. HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-18-518-G |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Ryki G. Hudson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Upon review of the administrative record (Doc. No. 10, hereinafter "R. \_"),[2] and the arguments and authorities submitted by the parties, the Court affirms the Commissioner's decision.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her DIB application on May 22, 2015, alleging a disability onset date of September 1, 2014. R. 10, 268-71. Following denial of her application initially and on reconsideration, a hearing was held before an Administrative

---

[1] The current Commissioner is hereby substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Law Judge ("ALJ") on October 20, 2016. R. 10, 64-101, 123-27, 129-31. A supplemental hearing was held on May 2, 2017, at which a vocational expert ("VE") testified. R. 10, 42-63. The ALJ issued an unfavorable decision on August 15, 2017. R. 7-36.

As relevant here, the Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2014, the alleged onset date. R. 12. At step two, the ALJ determined that Plaintiff had the severe impairments of obesity and schizophrenia. R. 12-19. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19-21.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 21-28. The ALJ found that

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) except sit 6 hours in an 8 hour workday; stand/walk 2 hours in an 8 hour workday; no climbing of ladders, ropes, or scaffolds; can perform simple tasks with routine supervision, no public contact or customer service work; able to interact appropriately with supervisors and co-workers on a superficial work basis; able to adapt to work situations.

R. 21-28. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. R. 28.

At step five, the ALJ considered whether there were jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 28-29. Relying upon the VE's testimony regarding

2

the degree of erosion to the unskilled sedentary occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform the light, unskilled occupation of office helper and the sedentary, unskilled occupations of table worker and document preparer. The ALJ additionally found that such occupations offered jobs that exist in significant numbers in the national economy. R. 29. Therefore, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act during the relevant time period. R. 29.

Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-6; 20 C.F.R. § 404.981.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal

quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In her request for judicial review, Plaintiff contends that the ALJ improperly evaluated the medical opinions of Plaintiff's treating psychiatrist, Everett Bayne, MD, and those of state-agency psychologists. *See* Pl.'s Br. (Doc. No. 21) at 10-17.

A. *The ALJ's Assessment of Dr. Bayne's Medical Opinion*

The record reflects that Plaintiff received medical treatment from her treating psychiatrist, Dr. Bayne, on multiple occasions from 2014 to 2017. Plaintiff asserts that the ALJ committed legal error by failing to evaluate Dr. Bayne's medical opinions in accordance with the "treating-physician rule." Specifically, Plaintiff objects to the ALJ's finding that Dr. Bayne's opinions are inconsistent with other medical evidence in the record and are therefore entitled to limited weight. *See* Pl.'s Br. at 10-14.

1. <u>The Treating-Physician Rule</u>

Specific SSA regulations govern the consideration of opinions by "acceptable medical sources." *See* 20 C.F.R. §§ 404.1502, .1513(a). The Commissioner generally gives the highest weight to the medical opinions of a "treating source," which includes a physician who has "provided [the claimant] with medical treatment or evaluation" during a current or past "ongoing treatment relationship" with the claimant. *Id.* §§ 404.1502, .1527(c); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

4

When considering the medical opinion of a claimant's treating physician, the ALJ must follow a two-step procedure. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). First, the ALJ must determine whether the treating physician's opinion should be given "controlling weight" on the matter to which it relates. *See id.*; 20 C.F.R. § 404.1527(c)(2). The medical opinion of a treating physician is given controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)).[3]

A treating physician opinion not afforded controlling weight is still entitled to deference. *See Watkins*, 350 F.3d at 1300; SSR 96-2p, 1996 WL 374188, at *4. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4. That an opinion is not given controlling weight does not resolve the second, distinct assessment—i.e., what lesser weight should be afforded the opinion and why. *See Watkins*, 350 F.3d at 1300-01. In this second inquiry, the ALJ weighs the relevant medical opinion using a prescribed set of regulatory factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a

---

[3] Social Security Ruling 96-2p has been rescinded for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263-01 (Mar. 27, 2017).

5

> whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see* 20 C.F.R. § 404.1527(c)(2)-(6).

The ALJ's decision "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Watkins*, 350 F.3d at 1300 (quoting SSR 96-2p, 1996 WL 374188, at *5). If an ALJ rejects a treating source opinion altogether, he or she "must then give specific, legitimate reasons for doing so." *Id.* at 1301 (internal quotation marks omitted).

2. The Relevant Record and Written Decision

The record contains 13 progress notes completed by Dr. Bayne during his treatment of Plaintiff from 2014 to 2016.[4] The majority of these progress notes describe Plaintiff's physical appearance as neat and clean, her speech as normal, her thought process as logical and goal-directed, her associations as coherent, her judgement and insight as average, her memory, attention and concentration as adequate, and her mood, affect, and sleep as normal. The majority of the progress notes additionally describe Plaintiff as oriented in all

---

[4] The record contains Dr. Bayne's progress notes from the following dates: December 10, 2014 (R. 454-57), January 7, 2015 (R. 459-64), February 4, 2015 (R. 468-70), March 17, 2015 (R. 472-75), April 14, 2015 (R. 477-79), May 12, 2015 (R. 481-84), June 9, 2015 (R. 486-88), July 7, 2015 (R. 528-30), August 4, 2015 (R. 532-34), September 1, 2015 (R. 572-74), September 29, 2015 (R. 554-56), October 27, 2015 (R. 551-53), and January 14, 2016 (R. 548-50).

6

spheres, aware of current events, and able to name objects and repeat phrases without any problem. R. 456, 463, 469, 473, 478, 483, 487, 529, 533, 549, 551-52, 555, 573.

On August 11, 2015, Dr. Bayne completed a one-page form supplying his opinions regarding Plaintiff's mental RFC ("RFC Form"). R. 535. In this RFC Form, Dr. Bayne opined that Plaintiff could perform the following activities approximately one-half of the time: (1) remember worklike procedures, (2) understand, remember, and carry out very short and simple instructions, (3) sustain an ordinary routine without special supervision, and (4) get along with co-workers and relate on a superficial basis. Dr. Bayne additionally opined that Plaintiff could only rarely: (1) maintain attention for two-hour segments, (2) maintain regular attendance and punctuality within customary tolerances, and (3) accept instructions and respond appropriately to criticism from supervisors. R. 535. Dr. Bayne also noted that Plaintiff's mental impairments or treatment would cause her to be absent from work more than three days a month. R. 535. Dr. Bayne stated that the impairments causing these limitations include Plaintiff's "belief that foreign bodies crawl on her or are inside her body," that Plaintiff "has auditory hallucinations with paranoid content," that she believes her activities are monitored by others who intend to cause her harm," and that she "often wears gloves to keep these bodies from getting into her food." R. 535. Dr. Bayne concluded that Plaintiff "would have a difficult time functioning on a job due to her misperceptions of reality." R. 535.

The record also contains three mental status exams from 2017. R. 647-52. Each found that Plaintiff's thought content and speech were normal, her associations were coherent, her judgment was good, her appearance was appropriate, and her mood and affect

7

were normal. R. 647, 649, 651. Two of the three exams found that Plaintiff was oriented in all four spheres. R. 649, 651. One exam additionally noted that Plaintiff's memory was adequate, her listening ability was alert, and her sleep was fair. R. 647.

In the written decision, the ALJ discussed Dr. Bayne's treatment records at length. *See* R. 13-19, 24, 27. He then provided the following explanation regarding the weight he afforded Dr. Bayne's opinions contained in the RFC Form:

> Limited weight is given to Dr. Bayne's Mental [RFC] assessment at Exhibit 6F. . . . This opinion is not consistent with other evidence in the record such as the statements by claimant on July 7, 2015, on a visit to Red Rock she reported feeling good and medications were working. The examiner stated that claimant reported mood as stable overall and denied perceptual disturbances in any modality. Her mood/affect was normal and attention/concentration was adequate. On August 4, 2015, claimant reported mood fairly stable[.] She had adequate memory an[d] average judgment/insight (Exhibit 5F). On March 7, 2017, mental status exam showed she was oriented times 4, had normal thought content and normal speech. She understands her problem. Her appearance was appropriate. Her mood/affect was normal (Exhibit 15F).

R. 27.

3. Discussion

As noted, the ALJ determined that Dr. Bayne's opinions were entitled to only limited weight because they were inconsistent with other evidence in the record, including Dr. Bayne's own treatment notes. R. 27; *see* 20 C.F.R. § 404.1527(c)(4) (explaining that "the more consistent a medical opinion is with the record as a whole, the more weight [the Commissioner] will give to that medical opinion"). Plaintiff objects that this finding of inconsistency is not supported by substantial evidence. *See* Pl.'s Br. at 12-13. According to Plaintiff, the ALJ improperly ignored evidence that was consistent with Dr. Bayne's

8

opinions while referencing only the portions that were inconsistent. *See id.* (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) for the proposition that it is "improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence"); *see* Pl.'s Reply (Doc. No. 22) at 1-3.

As examples of evidence consistent with Dr. Bayne's opinions, Plaintiff points to Dr. Bayne's notation in the August 4, 2015 progress note that Plaintiff told him "she felt drowsy, was doing 'so-so' and reported hearing voices," as well as to Dr. Bayne's notation that Plaintiff had auditory hallucinations. Pl.'s Br. at 13; R. 532-33. The notation that Plaintiff reported feeling drowsy, however, is insufficient to overcome the substantial evidence supporting the ALJ's determination that Dr. Bayne's opinions were inconsistent with the medical evidence of record. *See Branum*, 385 F.3d at 1270 (explaining that a decision is "not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it" (internal quotation marks omitted)). Moreover, Dr. Bayne's notation that Plaintiff experiences auditory hallucinations is not probative of the type or severity of functional limitations such hallucinations may cause. *See* R. 535 (Dr. Bayne listing Plaintiff's auditory hallucinations as a condition or impairment causing the proposed functional limitations).

The ALJ correctly identified evidence that conflicted with Dr. Bayne's opinions, including Dr. Bayne's own treatment notes—which contained multiple notations that Plaintiff was "feeling good," had a stable mood and affect, a logical thought process, and adequate memory, attention, and concentration—as well as the similar findings from the

2017 mental status exams, as described above. Having carefully examined the record for evidence that may detract from the ALJ's findings, the Court concludes that substantial evidence supports the ALJ's determination that the degree of conflicting evidence warranted the rejection of Dr. Bayne's opinions.

Insofar as Plaintiff additionally argues that the ALJ failed to follow proper legal standards in considering Dr. Bayne's opinion, the Court disagrees. The ALJ chose to reject the treating source opinion based upon contradictory medical evidence, an analysis that follows the regulatory directives of 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1527(c)(4) (listing "consistency" as a proper factor to consider when weighing opinion evidence and explaining that "the more consistent a medical opinion is with the record as a whole, the more weight [the Commissioner] will give to that medical opinion").

In her Reply, Plaintiff faults the ALJ for failing to consider each factor set forth in 20 C.F.R. § 404.1527(c) when determining the level of deference to afford Dr. Bayne's opinion. *See* Pl.'s Reply at 4-5. The ALJ, however, "is not required to mechanically apply all of [the regulatory] factors in a given case." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527[(c)] factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. [The plaintiff] cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

Accordingly, Plaintiff has not shown that the ALJ failed to follow correct legal standards in considering Dr. Bayne's opinion or that the ALJ's reasons were not supported by substantial evidence. *See Langley*, 373 F.3d at 1121.

B. *The ALJ's Assessment of the State-Agency Physicians' Opinions*

Plaintiff next argues that the ALJ's consideration of the state-agency psychologists' opinions was "internally inconsistent" because he gave them great weight at step three but no weight in a separate section of the written decision. *See* Pl.'s Mot. at 14-16; R. 19, 26-27. Plaintiff objects that "[e]vidence the ALJ finds unsupported at one step of the five-step analysis cannot also be given great weight to support findings at another step of the analysis." Pl.'s Mot. at 15.

The Court does not agree with Plaintiff's interpretation of the ALJ's findings. The written decision reflects that the ALJ was addressing different portions of the state-agency consultants' opinions at different points within the written decision, not weighing the same opinions twice. The ALJ specified at step three that she granted great weight "to the specific opinions" of the state-agency consultants that Plaintiff did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Step-Three Opinions"). R. 19. In a separate portion of her written decision, the ALJ gave no weight to the state-agency consultants' opinions regarding a separate issue—whether Plaintiff's mental and physical impairments were severe or non-severe. R. 26. The Court finds no error in the ALJ's determination that different portions of the state-agency consultants' opinions should be afforded different weights. Indeed, where one portion of an opinion is supported by the record but another portion is not, assigning the

portions different weights is the proper course.  *See, e.g.*, *Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005).

Plaintiff further contends that, while the ALJ was correct to reject the state-agency consultants' opinions that Plaintiff's impairments were non-severe, the ALJ erred in giving their Step-Three Opinions great weight.  *See* Pl.'s Mot. at 16.  Plaintiff does not elaborate on this conclusory argument or offer any support from the record suggesting that the weight assigned to the Step-Three Opinions was improper.  *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 650 (10th Cir. 2016) ("[I]t isn't [the Court's] obligation to search the record and construct a party's arguments.").

CONCLUSION

The decision of the Commissioner is AFFIRMED.  Judgment shall issue accordingly.

IT IS SO ORDERED this 28th day of August, 2019.

_____
CHARLES B. GOODWIN
United States District Judge

12